UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 10-12095-AJC

Chapter 13

| | |
|---|---|
| IN RE: | : |
| | : |
| Miles C. Jennings, Jr. and | : |
| Roslyn D. Jennings | : |
| | : |
| Debtors. | : |
| _____ | : |

## MOTION BY KONDAUR CAPITAL CORPORATION FOR RELIEF FROM STAY AND ABANDONMENT AND NOTICE OF OPPORTUNITY TO OBJECT AND FOR HEARING RE: 3771 Frow Avenue, Miami, Florida  33133

**Any interested party who fails to file and serve a written response to this motion within 20 calendar days after the date of service stated in this motion shall, pursuant to Local Rule 9013-1(D), be deemed to have consented to the entry of an order in the form attached to this motion.  Any scheduled hearing may then be canceled.**

TO THE HONORABLE JUDGE OF SAID COURT:

Comes Now, KONDAUR CAPITAL CORPORATION, by and through its

undersigned attorneys, moves the Court for an Order Granting Relief of Automatic Stay

and in support thereof would show:

1.      That Debtor filed a Chapter 13 petition in bankruptcy in the United States

Bankruptcy Court for the Southern District of Florida on January 29, 2010.

2.      This is a motion pursuant to Bankruptcy Rule 4001(a) for a modification

of the automatic stay provisions of Section 362(d)(1) of the Bankruptcy Code.

3.      That KONDAUR CAPITAL CORPORATION, is a secured creditor by

virtue of a promissory note and mortgage on real property.  Said real property has the

following legal description: Lot 9, Block 3 of MACFARLANE HOMESTEAD, according to the Plat thereof as recorded in Plat Book 5, at Page 81 of the Public Records of Miami-Dade County, Florida a/k/a 3771 Frow Avenue, Miami, Florida  33133.  The note and mortgage are attached hereto as Exhibit "A".

4.      That payments due pursuant to the aforementioned note and mortgage have been in default, and remain in default since June 1, 2007.

5.      That the aforementioned documents give the secured creditor, KONDAUR CAPITAL CORPORATION, a first mortgage position on the property known as: 3771 Frow Avenue, Miami, Florida  33133.

6.      That Debtors are indebted to the secured creditor in the amount of $302,317.40 as set forth in KONDAUR CAPITAL CORPORATION's Affidavit of Indebtedness which is attached to this motion as Exhibit "B".

7.      The Miami-Dade County Property Appraiser shows a just market value of the property at $205,725.00.  A copy of the appraisal is attached hereto and made a part hereof as Exhibit "C".

8.      That the Debtors failed to adequately protect the interest of the secured creditor.

9.      That there is no equity in the property.

10.      Movant has incurred attorney's fees in the amount of $ 550.00 as a result of the necessity of filing this Motion.  Said attorney's fees and costs may be recoverable pursuant to state law and the mortgage documents.

11.      That KONDAUR CAPITAL CORPORATION, is prohibited from instituting and/or completing a foreclosure action in the State Court because of the

pendency of this Bankruptcy motion, and that in the absence of the court's Order

allowing the secured creditor, KONDAUR CAPITAL CORPORATION, to proceed with

the Foreclosure action, the secured creditor's security will be significantly jeopardized.

  12. A copy of the proposed Order is attached as Exhibit "D".

  WHEREFORE, PREMISES CONSIDERED, Movant prays that the Debtor be

cited to appear herein, that upon final hearing hereof, this Court enter an order modifying

the automatic stay under 11 U.S.C. 362(d), to permit Movant to take any and all steps

necessary to exercise any and all rights it may have to the collateral described herein and

to gain possession of said collateral and that Movant have such other and further relief as

is just.  Further, Movant requests that the 10-day stay period imposed by F.R.B.P.

4001(a)(3) be waived or reduced.

## CERTIFICATE PURSUANT TO LOCAL RULE 9011-4(B)(1)

  I hereby certify that I am admitted to the Bar of the United States District Court

for the Southern District of Florida and I am in compliance with the additional

qualifications to practice in this court set forth in Local Rule 2090-1(A).

## CERTIFICATE PURSUANT TO LOCAL RULE 9073-1(D)

  I further certify that I have conferred with opposing counsel in an attempt to

resolve these issues without a hearing.

## CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that a true and correct copy of the foregoing Motion By
Kondaur Capital Corporation For Relief From Stay And Abandonment And Notice Of
Opportunity To Object And For Hearing Re: 3771 Frow Avenue, Miami, Florida 33133,
proposed Order Granting Kondaur Capital Corporation's Motion For Relief From Stay
And Abandonment, copy of the Affidavit of Indebtedness, copy of the Appraisal, and
copies of the Note and Mortgage have been served by either CM/ECF transmission or
standard first class U.S. Mail on this 9th day of April, 2010 to the following:

Miles C. Jennings, Jr., 3471 Oak Avenue, Miami, FL   33133

Roslyn D. Jennings, 3471 Oak Avenue, Miami, FL  33133

Michael A. Frank, Esquire, 10 N.W. LeJeune Road, #620, Miami, FL   33126

Roy A. Diaz, Esquire, 2691 E. Oakland Park Blvd., #303, Ft. Lauderdale, FL   33306

Mark E. Steiner, Esquire, 900 S. Pine Island Road, #400, Plantation, FL   33324

American Home Mortgage Servicing, Inc. 1525 S. Beltline Road, #100N, Coppell, TX 75019

Nancy N. Herkert, P. O. Box 279806, Miramar, FL   33027

Office of the U.S. Trustee, 51 S.W. 1st Avenue, Suite 1204, Miami, FL   33130

Recovery Management Systems Corporation, 25 S.E. 2nd Avenue, #1120, Miami, FL 33131-1605

Dated: April 9, 2010                    Respectfully submitted,


                                        By: /s/  Lawrence M. Weisberg
                                        Lawrence M. Weisberg, Esquire
                                        Florida Bar No. 962198
                                        Counsel for Kondaur Capital Corporation
                                        21301 Powerline Road, Suite 100
                                        Boca Raton, Florida   33433
                                        Telephone: (561) 362-7355
                                        Facsimile: (800) 531-8906
                                        E-mail: bankruptcy@lmwlegal.com

CFN 2007R00020682
OR Bk 25256 Pgs 2863 - 2882; (20pgs)
RECORDED 01/06/2007 13:38:27
MTG DOC TAX 840.00
INTANG TAX 480.00
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

Return To:

Fremont Investment & Loan
P.O. BOX 34078
FULLERTON. CA  92834-34078

This document was prepared by:

Barbara Licon

████████4570

———————————————[Space Above This Line For Recording Data]————————————

# MORTGAGE ████████████ 70-3

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated December 21, 2006            ,
together with all Riders to this document.
(B) **"Borrower"** is ROSLYN  JENNINGS and MILES  JENNINGS, JR., wife and husband

Borrower is the mortgagor under this Security Instrument.
(C) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) **"Lender"** is Fremont Investment & Loan

FLORIDA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3010  1/01

████ -6A(FL) (0005).02
Page 1 of 18       Initials
VMP MORTGAGE FORMS - (800)521-7291

— $Exh.$  "A"  —

Lender is a     CORPORATION
organized and existing under the laws of    CALIFORNIA
Lender's address is 2727 East Imperial Highway, Brea, CA 92821

(E) "Note" means the promissory note signed by Borrower and dated December 21, 2006
The Note states that Borrower owes Lender Two Hundred Forty Thousand  and 0/100ths
                                                                                                          Dollars
(U.S. $240,000.00         ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than January 01, 2037
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider   ☐ Condominium Rider              ☐ Second Home Rider
☐ Balloon Rider           ☐ Planned Unit Development Rider ☒ 1-4 Family Rider
☐ VA Rider                ☐ Biweekly Payment Rider         ☐ Other(s) [specify]

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

-6A(FL) (0005).02                    Page 2 of 16        Initials:                  Form 3010  1/01

(F) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq,) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the County          [Type of Recording Jurisdiction]
of Miami-Dade                                                                [Name of Recording Jurisdiction]:
SEE ATTACHED LEGAL DESCRIPTION AND MADE A PART THEREOF

Parcel ID Number: 01-41200060580                        which currently has the address of
3771 FROW AVENUE                                                             [Street]
Miami                                                 [City], Florida 33133        [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

-6A(FL) (0005).02                        Page 3 of 18        Initials:                Form 3010  1/01

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment

-6A(FL) (0005).02                         Page 4 of 16         Initials:                    Form 3010  1/01

can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum, (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest

-6A(FL) (0005).02                        Page 5 of 16            Initials:           Form 3010  1/01

shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

-6A(FL) (0005).02          Page 6 of 16     Initials:          Form 3010  1/01

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

-6A(FL) (0005).02                    Page 7 of 16    Initials:          Form 3010  1/01

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

-6A(FL) (0005).02

Page 8 of 16    Initials:

Form 3010 1/01

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of

-6A(FL) (0005).02                           Page 10 of 16              Initials:              Form 3010  1/01

any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers

unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the

-6A(FL) (0005).02                          Page 12 of 16      Initials: ___      Form 3010  1/01

purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

-6A(FL) (0005).02                    Page 13 of 16                    Initials:                    Form 3010  1/01

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**25. Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

-6A(FL) (0005).02                     Page 14 of 16              Initials:          Form 3010 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

** THERE ARE NON-OBLIGATED SIGNER(S) WHO MUST EXECUTE THIS DOCUMENT **

_____          _____ (Seal)
                                          ROSLYN  JENNINGS            -Borrower

                                          _____
                                                                      (Address)

_____          _____ (Seal)
                                          MILES  JENNINGS, JR.        -Borrower

                                          _____
                                                                      (Address)

_____ (Seal)   _____ (Seal)
                           -Borrower                                  -Borrower

_____          _____
                           (Address)                                 (Address)

_____ (Seal)   _____ (Seal)
                           -Borrower                                  -Borrower

_____          _____
                           (Address)                                 (Address)

_____ (Seal)   _____ (Seal)
                           -Borrower                                  -Borrower

_____          _____
                           (Address)                                 (Address)

STATE OF FLORIDA,                           *Browore*l* County ss:
    The foregoing instrument was acknowledged before me this  *Dec. 21, 2006*    by

*Roslyn Jennings and Miles Jennings,*
    *wife and husband*

who is personally known to me or who has produced *Driver's License* as identification.

_____
                    Notary Public

RICHARD W. BLAKE
Notary Public - State of Florida
My Commission Expires Mar 4, 2008
Commission # DD296302
Bonded By National Notary Assn.

@-6A(FL) (0005).02                    Page 16 of 18   Initials: ___        Form 3010  1/01

# Exhibit A

Lot 9, in Block 3 of MACFARLANE HOMESTEAD, according to the Plat thereof, as recorded in Plat Book 5, at Page 81, of the Public Records of Miami-Dade County, Florida.

Parcel Identification Number: 01-41200060580

File Number: 06-1280

DoubleTime®

# 1-4 FAMILY RIDER
## (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 21st day of December, 2006 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to Fremont Investment & Loan

(the

"Lender") of the same date and covering the Property described in the Security Instrument and located at: 3771 FROW AVENUE, Miami, FL 33133

[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**MULTISTATE 1- 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3170 1/01**

VMP-57R (0411)
Page 1 of 3    Initials:
VMP Mortgage Solutions, Inc.
(800)521-7291

**E. "BORROWER'S RIGHT TO REINSTATE"** DELETED. Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.
** THERE ARE NON-OBLIGATED SIGNER(S) WHO MUST EXECUTE THIS DOCUMENT **

_____ (Seal)          _____ (Seal)
ROSLYN  JENNINGS          -Borrower       MILES  JENNINGS, JR.       -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                  -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                  -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                  -Borrower

VMP-57R (0411)                    Page 3 of 3                    Form 3170 1/01

# Exhibit A

Lot 9, in Block 3 of MACFARLANE HOMESTEAD, according to the Plat thereof, as recorded in Plat Book 5, at Page 81, of the Public Records of Miami-Dade County, Florida.

Parcel Identification Number: 01-41200060580

File Number: 06-1280

DoubleTime

*True and Certified*
*Copy of the Original*

*Closing Agent*

# 1-4 FAMILY RIDER
### (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 21st      day of December, 2006      ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure Borrower's Note to Fremont Investment & Loan

(the

"Lender") of the same date and covering the Property described in the Security Instrument
and located at: 3771 FROW AVENUE, Miami, FL  33133

[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to
the Property described in the Security Instrument, the following items now or hereafter
attached to the Property to the extent they are fixtures are added to the Property description,
and shall also constitute the Property covered by the Security Instrument: building materials,
appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or
intended to be used in connection with the Property, including, but not limited to, those for
the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light,
fire prevention and extinguishing apparatus, security and access control apparatus, plumbing,
bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers,
disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades,
curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings,
all of which, including replacements and additions thereto, shall be deemed to be and remain
a part of the Property covered by the Security Instrument. All of the foregoing together with
the Property described in the Security Instrument (or the leasehold estate if the Security
Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security
Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or
make a change in the use of the Property or its zoning classification, unless Lender has
agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations
and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow
any lien inferior to the Security Instrument to be perfected against the Property without
Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in
addition to the other hazards for which insurance is required by Section 5.

MULTISTATE 1- 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01

VMP®-57R (0411)
Page 1 of 3        Initials:
VMP Mortgage Solutions, Inc.
(800)521-7291

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

Initials: _____

-57R (0411)                    Page 2 of 3                    Form 3170 1/01



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.
** THERE ARE NON-OBLIGATED SIGNER(S) WHO MUST EXECUTE THIS DOCUMENT **

_____ (Seal)        _____ (Seal)
ROSLYN  JENNINGS        -Borrower      MILES  JENNINGS  JR.    -Borrower

_____ (Seal)        _____ (Seal)
                        -Borrower                              -Borrower

_____ (Seal)        _____ (Seal)
                        -Borrower                              -Borrower

_____ (Seal)        _____ (Seal)
                        -Borrower                              -Borrower

VMP-57R (0411)                Page 3 of 3                Form 3170 1/01

147D03
9515001

This Instrument Prepared By:
Rhonda Porter
GRP Financial Services Corp
445 Hamilton Ave. 8th Fl
White Plains, NY 10601
GRP 21874

## CORPORATE ASSIGNMENT OF MORTGAGE/DEED OF TRUST

Miami-Dade COUNTY, FL

Date of Assignment: 10/26/09
Assignor: GRP Loan, LLC

Assignee:

Executed By: Jennings, Roslyn
Lender/Beneficiary: MERS as nominee for Fremont Investment & Loan
Date of Mortgage: 12/21/2006
Date of Recording:
Book and Page:
Original Loan Balance: $240000

Property Address: 3771 Frow Avenue, Miami, FL 33133

FOR VALUE RECEIVED, GRP Loan, LLC hereby grants, assigns and transfers to

Assignee, all beneficial interests under that certain Mortgage/Deed of Trust referred to herein together with the Note or other evidence of indebtedness (the "Note"), described or referred to the money due and to become due thereon with interest, and all rights accrued or to accrue under said Mortgage/Deed of Trust and the full benefit of all the powers and of all the covenants and provisions therein contained.

TO HAVE AND TO HOLD the said Mortgage/Deed of Trust and Note, and also the said property unto the said Assignee forever, subject to the terms contained in said presents the day and year first above written.

In Witness Whereof, the undersigned Assignor has executed this Corporate Assignment of Mortgage/Deed of Trust on _____.

Witness: _____

Print Name: _____

Witness: _____

Print Name: _____

**GRP Loan, LLC**

By: _____
Print Name: Robert B. Farrington, Secretary

STATE OF NEW YORK:
COUNTY OF WESTCHESTER: ss.:

On the OCT 20 2009 day of _____ in the year 2009 before me, the undersigned, personally appeared Robert B. Farrington, Secretary of GRP Loan, LLC, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies) and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument and that such individual made such appearance before the undersigned in the City of White Plains, County of Westchester and State of New York

RHONDA PORTER
Notary Public, State of New York
No. 01PO6189984
Qualified in Dutchess County
Commission Expires January 17, 20__

_____
Notary Public

CFN 2008R0416760
OR Bk 26389 Pgs 1411 - 14141 (4pgs)
RECORDED 05/20/2008 15:13:37
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

Record and Return To:
GRP Financial Services
445 Hamilton Ave. 8ᵀᴴ Fl
White Plains, NY 10601    21874
Attn: Rhonda Porter

Certified to be a true
and correct copy of the original
by _____

This Instrument Prepared By:
Barbara Licon
P.O. Box 34078, Fullerton, CA 92834-3407

Tel. No.: (714) 283-6579

# ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for
FREMONT INVESTMENT & LOAN

its successors and assigns, does hereby grant, sell,

assign, transfer and convey, unto GRP Loan, LLC

, a corporation

organized and existing under the laws of DE        (herein "Assignee"), whose
address is 445 Hamilton Ave White Plains NY 10601
its successors and assigns, all its right, title and interest in and to a certain Deed of Trust, dated December
21, 2006 , made and executed by ROSLYN JENNINGS and MILES JENNINGS, JR., wife
and husband

whose address is 3771 FROW AVENUE, Miami, FL 33133

to and in favor of First American Title & Trust Company

                                                          upon the
following described property situated in Miami-Dade                County, State
of FL                    :
SEE ATTACHED LEGAL DESCRIPTION AND MADE A PART THEREOF

such Mortgage having been given to secure payment of Two Hundred Forty Thousand and
                                                      ($ 240,000.00      )
00/100ths
(Include the Original Principal Amount) which Mortgage is of record in Book, Volume, or Liber No.
25056        , at page 2863        (or as No. 2007R00206?2      ) of the
                              Records of Miami-Dade

MERS - Multistate Assignment of Mortgage
[logo] 45M (0410)        10/04
Page 1 of 2
VMP Mortgage Solutions, Inc. (800)521-7291

Assignment

Book26389/Page1411    6760        Page 1 of 4

County, State of FLORIDA                          , together with the note(s) and obligations therein
                                                 , and all rights accrued or to accrue

under such Mortgage.
    TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to
the terms and conditions of the above-described Mortgage.
    IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on
                              OCT 3 1 2007

                                                 Mortgage Electronic Registration Systems, Inc.
                                                 ("MERS")

Witness G. SMITH

                                          By: _____
Witness K. CONLEY                                    (Signature)
                                                     Jill Stewart
                                                     Vice President
Attest M. SISON

Seal:

──────────── 570-3      MERS Phone: 1-888-679-6377

VISA-86M (0410)                    Page 2 of 2

**LOAN NUMBER** ▓▓▓▓▓▓570

State of California
County of Orange

On **OCT 3 1 2007**       , before me, M. SISON                                       , Notary Public, personally appeared

Jill Stewart

XX personally known to me -OR-_____proved to me on the basis of satisfactory evidence, to be the person(s)
whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s),
or the entity upon behalf of the which the person(s) acted, executed the instrument.



M. SISON
Commission # 1613586
Notary Public - California
Orange County
My Comm. Expires Oct 16, 2009

(Notary Seal)

**WITNESS** my hand and official seal

M. SISON

JURAT for MERS Assignment     RGC   05/21/04

Book26389/Page1413    ▓▓▓▓▓▓6760                Page 3 of 4

OR BK 26389 PG 1414
LAST PAGE

**Exhibit A**

Lot 9, in Block 3 of MACFARLANE HOMESTEAD, according to the Plat thereof, as recorded in Plat Book 5, at Page 81, of the Public Records of Miami-Dade County, Florida.

Parcel Identification Number: 01-4120006058S

799 19

File Number 96-1380                                                    DoubleTime

Book26389/Page1414    6760              Page 4 of 4

# NOTE

December 21, 2006                    BREA                         CA  92821
[Date]                              [City]                        [State]

3771 FROW AVENUE, Miami, FL  33133

[Property Address]

**1. BORROWER'S PROMISE TO PAY**
  In return for a loan that I have received, I promise to pay U.S. $ 240,000.00    (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is  Fremont Investment & Loan


I will make all payments under this Note in the form of cash, check or money order.
  I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is
entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**
  Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly
rate of        8.000 %.
  The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B)
of this Note.

**3. PAYMENTS**
  **(A) Time and Place of Payments**
  I will pay principal and interest by making a payment every month.
  I will make my monthly payment on the   first   day of each month beginning on     February 01, 2007 . I will
make these payments every month until I have paid all of the principal and interest and any other charges described below that I
may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest
before Principal. If, on   January 01, 2037.    , I still owe amounts under this Note, I will pay those amounts in full on
that date, which is called the "Maturity Date."
  I will make my monthly payments at   2727 East Imperial Highway, Brea, CA  92821
                                         or at a different place if required by the Note Holder.


  **(B) Amount of Monthly Payments**
  My monthly payment will be in the amount of U.S. $ 1,761.03

**4. BORROWER'S RIGHT TO PREPAY**     ** SEE PREPAYMENT RIDER ATTACHED HERETO AND MADE A PART HEREOF **
  I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a
"Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a
payment as a Prepayment if I have not made all the monthly payments due under the Note.
  I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my
Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my
Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the
Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my
monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

-5N (0207).01        Form 3200 1/01
  VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3               Initials:

Original Note & Riders

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    15    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    6.000    % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

** SEE PREPAYMENT RIDER ATTACHED HERETO AND MADE A PART HEREOF **

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)        _____ (Seal)
ROSLYN DENNINGS                 -Borrower                                    -Borrower


_____ (Seal)        _____ (Seal)
                                -Borrower                                    -Borrower


_____ (Seal)        _____ (Seal)
                                -Borrower                                    -Borrower


_____ (Seal)        _____ (Seal)
                                -Borrower                                    -Borrower

*[Sign Original Only]*

# PREPAYMENT RIDER TO NOTE

4570

THIS PREPAYMENT RIDER is made this 21st day of December, 2006, and is incorporated into and shall be deemed to amend and supplement the Note made by the undersigned (the "Borrower") to:

Fremont Investment & Loan

(the "lender") of the same date and covering the property located at:

3771 FROW AVENUE, Miami, FL 33133

(Property Address)

### BORROWER'S RIGHT TO PREPAY

### This Prepayment Rider Supersedes Section 4 of the Note

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment". When I make a prepayment, I will tell the Note Holder in a letter that I am doing so. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

I may make a full or partial prepayment; however, the Note Holder may charge me for the privilege of prepayment. If more than 20% of the original principal amount of this note is prepaid in any 12-month period within [ 3 Years ] after the date of this loan, I agree to pay a prepayment charge equal to six months interest on the amount prepaid which is in excess of 20% of the original principal amount of this Note. If I make a prepayment, there will be no delays in the due dates or changes in the amounts of my monthly payments unless the Note Holder agrees in writing to those delays or changes. I may make full prepayment at any time. If I choose to make a partial prepayment the Note Holder may require me to make the prepayment on the same day that one of my monthly payments is due. The Note Holder may also require that the amount of my partial prepayment be equal to the amount of the principal that would have been part of my next one or more monthly payments.

_____  12/31/06            _____
ROSLYN JENNINGS           Date                              Date

_____                      _____
                    Date                              Date

_____                      _____
                    Date                              Date

_____                      _____
                    Date                              Date

ITPPYRID    10/11/2005

ALLONGE

GRP Number: 21874
Borrower Name: Jennings, Roslyn
Property Address: 3771 Frow Avenue, Miami, FL 33133
Original Lender: MERS, Inc. as nominee for Fremont Investment & Loan
Loan Origination Date: 12/21/2006
Loan Amount: $240000

Pay to the order of:

without recourse, representation or warranty.

Dated:      /0/26/2009

GRP Loan, LLC

By
Name: Douglas Lombardo
Title: Vice President

\\apg.root.local\dfsprod\whiteplains\homedir\e38199\Allonge\Allonge Template.doc

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 10-12095-AJC

Chapter 13

IN RE:                                     :
                                           :
Miles C. Jennings, Jr. and                 :
Roslyn D. Jennings                         :
                                           :
                  Debtors.                 :
                                           :

## AFFIDAVIT OF INDEBTEDNESS

Affiant, Robert Willis is the Director of Loan Servicing, KONDAUR CAPITAL

CORPORATION ("Kondaur) in the Loan Servicing Department and is fully familiar

with the instant action and makes this affidavit on his own personal knowledge. He is

Kondaur's custodian of the business records concerning the transactions that were

referred to in the civil action to foreclose Kondaur's mortgage in State court. The records

are kept in the ordinary course of business and reflect events at or near the time of the

entry into the records.

According to those records, as of June 1, 2007, Kondaur was owed the following

sums on the $302,317.40 loan:

| | |
|---|---:|
| Principal: | $  239,349.42 |
| Interest thru April 6, 2010 | $    56,110.40 |
| Late Charges | $      3,592.50 |
| Corporate Advance | $      2,465.08 |
| Outstanding Foreclosure/Bankruptcy Fees | $        800.00 |

- $Exh. "B"$

To this amount would be added per diem amounts for the period after April 6, 2010. The per diem amount for the loan is $52.46 based upon a contract rate of 8.00% per annum.

Plaintiff has retained Lawrence M. Weisberg, Esquire from Greenfield & Coomber, P.A. to prosecute this action and has agreed to pay the firm reasonable attorney fees.

END OF AFFIDAVIT

Robert Willis

Sworn to and subscribed by **Robert Willis**, for Kondaur Capital Corporation before me on this day of April _____, 2010 and who is personally known to me or who has produced identification.

(SEAL)

Notary Public

JULIAN J. MORENO
Commission # 1866941
Notary Public - California
Orange County
My Comm. Expires Oct 2, 2013

2

Property Information Map

## My Home
### Miami-Dade County, Florida



*miamidade.gov*

**Property Information Map**



Digital Orthophotography - 2007

This map was created on 4/9/2010 8:34:25 PM for reference purposes only.

Web Site © 2002 Miami-Dade County. All rights reserved.

0 ——— 110 ft





### Summary Details:

| | |
|---|---|
| Folio No.: | 01-4120-006-0580 |
| Property: | 3771 FROW AVE |
| Mailing Address: | MILES C JENNINGS JR |
| | 3771 FROW AVE MIAMI FL 33133-4835 |

### Property Information:

| | |
|---|---|
| Primary Zone: | 0100 SINGLE FAMILY RESIDENCE |
| CLUC: | 0001 RESIDENTIAL-SINGLE FAMILY |
| Beds/Baths: | 2/1 |
| Floors: | 1 |
| Living Units: | 1 |
| Adj Sq Footage: | 848 |
| Lot Size: | 5,000 SQ FT |
| Year Built: | 1973 |
| Legal Description: | MACFARLANE HOMESTEAD PB 5-81 LOT 9 BLK 3 LOT SIZE 50,000 X 100 COC 21671-1858 07 2003 5 OR 20258-4203 0202 01 |

### Assessment Information:

| Year: | 2009 | 2008 |
|---|---|---|
| Land Value: | $150,000 | $162,000 |
| Building Value: | $55,725 | $56,399 |
| Market Value: | $205,725 | $218,399 |
| Assessed Value: | $205,725 | $218,399 |

### Taxable Value Information:

| Year: | 2009 | 2008 |
|---|---|---|
| Taxing Authority: | Applied Exemption/ Taxable Value: | Applied Exemption/ Taxable Value: |
| Regional: | $0/$205,725 | $0/$218,399 |
| County: | $0/$205,725 | $0/$218,399 |
| City: | $0/$205,725 | $0/$218,399 |
| School Board: | $0/$205,725 | $0/$218,399 |

### Sale Information:

| | |
|---|---|
| Sale Date: | 2/2002 |
| Sale Amount: | $0 |
| Sale O/R: | 20258-4203 |
| Sales Qualification Description: | Sales which are disqualified as a result of examination of the deed |
| | View Additional Sales |

—   $Exh. "C"$   —

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 10-12095-AJC

Chapter 13

IN RE:                                      :
                                            :
Miles C. Jennings, Jr. and                  :
Roslyn D. Jennings                          :
                                            :
                    Debtors.                :
_____         :

### ORDER GRANTING KONDAUR CAPITAL CORPORATION'S MOTION FOR RELIEF FROM STAY AND ABANDONMENT AND NOTICE OF OPPORTUNITY TO OBJECT AND FOR HEARING RE: 3771 Frow Avenue, Miami  33133

This cause came on for consideration by negative notice pursuant to the Motion

for Relief From Stay and Abandonment (Doc #_____) filed by KONDAUR CAPITAL

CORPORATION ("KONDAUR"), a secured creditor in the above-styled cause.  The

Court, having considered said Motion finds it appropriate to grant relief under Local Rule

4001-1(C) without further notice or hearing.  Therefore, it is

ORDERED as follows:

1.     The Motion for Relief From Stay filed by KONDAUR is granted.

2.     The automatic stay provided by 11 U.S.C. 362 is modified as to KONDAUR,

its Successors and Assigns.  Accordingly, the automatic stay is modified to permit the

Movant to commence and prosecute a mortgage foreclosure action in state court against

real property, the legal description of which is described below:

> Lot 9, Block 3 of MACFARLANE HOMESTEAD, according to the Plat
> thereof as recorded in Plat Book 5, at Page 81 of the Public Records of
> Miami-Dade County, Florida

—  $Exh. "D"$          —

a/k/a 3771 Frow Avenue, Miami, Florida 33133

3.    The entry of this Order does not prevent the Debtor from reinstating or paying off the amounts due and owing, including bankruptcy attorney's fees and costs, as permitted by state law and the Note and Mortgage.

4.    The ten (10) day period under Bankruptcy Rule 4001(a)(3) shall be waived upon relief being granted by the Court.

5.    This Order is entered for the sole purpose of allowing KONDAUR, its Successors and/or Assigns, to commence, prosecute and complete through judgment, sale, certificate of title and possession, a mortgage foreclosure against the property described above. FLAGSTAR, its Successors and/or Assigns, shall not seek or obtain an *in personam* judgment against the Debtor.

###

Submitted by

Lawrence M. Weisberg, Esquire
FLORIDA BAR NO. 962198
21301 Powerline Road, Suite 100
Boca Raton, Florida 33433
561-362-7355 (Telephone)
800-531-8906 (Facsimile)
bankruptcy@lmwlegal.com

The Movant is directed to serve copies of this order on the parties listed and file a certificate of service with the Court.

Miles C. Jennings, Jr.
3471 Oak Avenue
Miami, FL 33133

Roslyn D. Jennings
3471 Oak Avenue
Miami, FL 33133

2

Michael A. Frank, Esquire
10 N.W. LeJeune Road, #620
Miami, FL   33126

Roy A. Diaz, Esquire
2691 E. Oakland Park Blvd., #303
Ft. Lauderdale, FL   33306

Mark E. Steiner, Esquire
900 S. Pine Island Road, #400
Plantation, FL   33324

American Home Mortgage Servicing, Inc.
1525 S. Beltline Road, #100N
Coppell, TX   75019

Nancy N. Herkert
P. O. Box 279806
Miramar, FL   33027

Office of the U.S. Trustee
51 S.W. 1st Avenue, Suite 1204
Miami, FL   33130

Recovery Management Systems Corporation
25 S.E. 2nd Avenue, #1120
Miami, FL   33131-1605

KONDAUR CAPITAL CORPORATION

Lawrence M. Weisberg, Esquire
21301 Powerline Road
Suite 100
Boca Raton, FL   33433